```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
NICOLE GAUDIOSO,                                            :
                                                            :
                                Plaintiff,                  :       **MEMORANDUM**
                                                            :       **DECISION AND ORDER**
                - against -                                 :
                                                            :       17-cv-7398 (BMC)
COMMISSIONER OF SOCIAL SECURITY,                            :
                                                            :
                                Defendant.                  :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

1.   Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that she is not disabled, as defined in the Social Security Act and its regulations, for receiving social security disability insurance benefits under Title II of the Act. The ALJ found that plaintiff can perform sedentary work, despite severe impairments of degenerative disc disease, fibromyalgia, obesity, and asthma, subject to restrictions that included, *inter alia*, frequent (as opposed to constant) fine and gross manipulation. The sole issue that plaintiff raises in this review proceeding is that, according to her, the record shows that she can only perform occasional, not frequent, fine and gross manipulation with her hands, and that with that extra limitation, the record does not allow the conclusion that she could perform her past relevant work (schedule clerk) or any other jobs in the national economy.

2.   Plaintiff's argument rests on a very fine distinction. The Dictionary of Occupational Titles provides four levels of requirements for performing physical tasks in particular jobs: not present (*i.e.*, not required for the task at all), occasionally, frequently, and constantly (*i.e.*, without restriction). See Dep't of Labor, Selected Characteristics of Occupations

Defined in the Revised Dictionary of Occupational Titles, app. C at C-3 (1993), http://onlineresources.wnylc.net/docs/SelectedCharacteristicsSearch121110.pdf. Thus, plaintiff argues that the ALJ, in making a qualitative judgment based on the record about plaintiff's residual functional capacity, selected a physical task category one level too high.

3. In fact, the delta is even smaller than it appears because the categories almost overlap. "Occasionally" means that the job involves an activity or condition up to 1/3 of the time, while "frequently" involves an activity or condition 1/3 to 2/3 of the time. Taken to its logical conclusion, plaintiff's argument means that an ALJ is erroneous if he incorrectly concluded that a plaintiff could perform an activity or condition a hair more than 1/3 of the time, rather than a hair less.

4. The record does not support plaintiff's argument. The only evidence to which plaintiff points is the opinion of plaintiff's treating physician, rheumatologist Dr. Elena Sanders. But all that Dr. Sanders said in her questionnaire was that plaintiff has "hand tightness, difficulty performing fine motor task with hands." Everyone agrees that plaintiff has that difficulty. The ALJ did not reject this finding; indeed, he gave it "significant weight." Dr. Sanders's statement presents the reason why the ALJ found that plaintiff could not perform jobs requiring fine motor skills "constantly," *i.e.*, without restriction. But Dr. Sanders's opinion does not support plaintiff's argument that her residual functional capacity only permits her to use fine motor skills "occasionally," rather than "frequently."

5. Apparently recognizing this, plaintiff contends that the ALJ failed in his duty to obtain more evidence, by going back to Dr. Sanders for more detail or by getting another physician to address the question. It is worth noting that plaintiff was represented by counsel before the ALJ and her counsel saw no reason to request more documentation (although of

course that fact is not dispositive and does not absolve the ALJ of his duty to make sure the record is complete). Plaintiff's argument on this point fails for at least three other reasons.

6. First, it is not clear to the Court that any medical opinion could be phrased in a way that would resolve which of the two categories in question applies to plaintiff's impairment. The categories are job requirements, not assessments of residual functional capacity, and there is no reason to expect a physician to be familiar with the requirements of jobs listed in the Dictionary of Occupational Titles, that is, to understand the difference in that reference source between "occasionally" and "frequently" as applied to particular jobs. It would be akin to asking a doctor whether a claimant is disabled; the doctor's opinion on that issue is not probative, as the determination is something that the ALJ must arrive at himself by applying the regulations under the Act. Imagine asking any doctor – "can plaintiff perform a job requiring fine motor skills more than 1/3 or the time, or less than 1/3 of the time?" I am not at all sure that any opinion a physician might give, if she would venture such an opinion, would have much probative value.

7. Second, and more importantly, plaintiff's brief fails to address at all the other evidence besides that of her treating physician, which shows, in my view, that the ALJ was giving plaintiff the benefit of the doubt when he fully credited Dr. Sanders's opinion and restricted her residual functional capacity to using fine and gross manipulative abilities "frequently," rather than imposing no restriction at all (*i.e.*, "constant" use of hands).

8. For example, the records of plaintiff's orthopedist, Dr. John Reilly, after plaintiff's first motor vehicle accident in February or March 2014 showed that although plaintiff had tingling pain radiating up and down her upper right extremity, she had uncompromised (5/5) grip strength with what the doctor described as only "mild discomfort" during the grip strength test. Those records also show that plaintiff had full motion at the wrist. Several weeks later, x-

rays of plaintiff's wrist showed no damage and she had no restriction of motion. She was able to flex and extend her fingers without restriction. Five months later, she had normal results from the orthopedic examination of her left and right upper extremities, including normal range of motion. Three months after that, when she was complaining of pain and tightness in her right wrist, her doctor found that although she was tender to palpitation in a few areas, she had full range of motion in her wrist and fingers.

9. After her second car accident (a little more than a year after the first), plaintiff's complaints of numbness and tingling in her hands increased. The orthopedist, a different doctor at the same practice as Dr. Reilly, however, found normal tone and bulk (no muscle loss) and full power in all extremities. Plaintiff had full sensation, and her "fine finger movements were intact bilaterally." The EMG and the nerve conduction velocity test of her lower and upper extremities performed in June 2016 were neurologically normal (negative for peripheral neuropathy). Later appointments with her neurologist's assistant repeated these findings, consistently noting intact sensation and fine finger movements, full motor strength, and grip. By December 2016, a treatment note from one of the orthopedist's assistants noted that plaintiff was "no longer experiencing radiculopathy down her bilateral upper extremities."

10. Thus, there was plenty of evidence in the record suggesting that a restriction to jobs requiring only "occasional" use of motor skills was not required and a "frequent" use restriction was appropriate. There was no reason for the ALJ to follow up with Dr. Sanders for more information or to solicit other medical evidence.

11. The third reason that plaintiff's argument fails is because, to the extent that the ALJ interpreted Dr. Sanders's *opinion* as limiting plaintiff to jobs requiring frequent, not occasional fine motor skills, Dr. Sanders's *treatment notes* did not suggest any such limitation on

those skills. Although the treatment notes are extensive, they do not mention fine-motor-skill limitations. To the contrary, each examination by Dr. Sanders showed full range of motion, no tenderness, and no swelling in plaintiff's hands and wrists. The clinical findings as to her hands and wrists were entirely normal. Similarly, plaintiff was able to do finger positioning and finger snapping during her February 2015 exam by Dr. Lamberto Flores, the internal medicine consultative examiner.[1]

12. If the issue in this case was whether plaintiff is able to perform jobs requiring "constant" use of motor skills, there might be a serious issue of whether the ALJ appropriately credited Dr. Sanders's opinion. Even then, because of the lack of support in the treatment notes for Dr. Sanders's opinion that plaintiff has "difficulty" in using her hands, there would be a strong argument that substantial evidence in the record supports the absence of any restriction. But here, where the only issue plaintiff raises is whether she should have been limited to jobs requiring "occasional" instead of "frequent" motor skills, the ALJ was well within the substantial evidence standard when he concluded that Dr. Sanders's reference to "difficulty" was fully accommodated by restricting plaintiff's jobs to those requiring "frequent," rather than "occasional" or "constant," use of those skills.

---

[1] For this reason, the ALJ gave Dr. Flores's opinion that plaintiff was limited in finger snapping "only partial weight."

13. The Commissioner's [12] motion for judgment on the pleadings is therefore GRANTED and plaintiff's [10] motion is DENIED. The Clerk is directed to enter judgment dismissing the complaint.

**SO ORDERED.**

                                                                                                      U.S.D.J.

Dated: Brooklyn, New York
       October 22, 2018